Filed 9/24/25  P. v. Marks CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL MARKS,<br><br>        Defendant and Appellant. | B337704<br><br>Los Angeles County<br>Super. Ct. No. YA054462 |

APPEAL from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Jennifer Peabody and Dee A. Hayashi, under appointments by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2003, a jury convicted Michael Marks of two counts of attempted murder and one count of kidnapping a person under 14 for repeatedly strangling his girlfriend and trying to break her neck, slamming her six-month-old baby into a wall, and taking her five-year-old son without permission.  He now appeals from the superior court's order denying his petition for resentencing under Penal Code section 1172.6.[1]  His appellate counsel asks us to follow the procedures outlined in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*).  Marks filed a supplemental brief.  We affirm the order denying Marks's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Facts[2]

On February 26, 2003, Marks went with his girlfriend Shalana Craig to pick up her children, Michael U. and Ryan S.  Michael was five years old.  Ryan was six months old.  After placing the children in the car, Craig heard Marks say, " 'Oh shit.' "  Craig saw and smelled liquid PCP on Marks's shirt.  Marks took off his shirt and said he "wasted" the PCP and had lost money.  Craig had seen Marks with a bottle of PCP before.  He would dip cigarettes in the bottle.  That night, he gave a cigarette dipped in PCP to Craig's cousin Eric Howard.  Marks drove Craig and the children to the motel where they were living.

The next morning, Marks stabbed Craig in the chest with a pen, telling her that she was the devil and she was "doing voodoo"

---

[1]    All undesignated statutory references are to the Penal Code.

[2]    We refer to the factual background from the opinion in *People v. Marks* (Jan. 26, 2006, B174648) [nonpub. opn.], which affirmed the judgment of conviction.  These facts are "for

to him.  Craig began to run but stopped because the children were still inside.  Marks grabbed Craig's neck and strangled her.  He again told Craig that she was the devil.  He also said God was telling him to kill her and she had to die.  Craig pretended to be dead.  But she coughed, alerting Marks that she was still alive.  Marks strangled Craig again until she passed out.  When Craig woke, Marks put his foot on her back and repeatedly tried to snap her neck.  After Craig unsuccessfully pretended to be dead again, Marks strangled her until she lost consciousness.

Marks picked up Ryan by his feet and swung his head into the wall.  Marks asked Michael if he wanted to be like Ryan.  Michael said, " 'No' "  Marks left the motel room with Michael.  He told Michael, " 'Don't worry.  She's still breathing.' "  Craig did not give Marks permission to take Michael from the room.

Ryan was lifeless on the floor.  Craig asked an occupant from a nearby room to call 911.  Ryan was taken to the hospital where he remained until March 30, 2003.  He sustained a fractured skull.  Tests indicated he would have permanent brain damage.

Marks drove Michael to an underpass near downtown Los Angeles and told him to get out and wait for the police.  After dropping off Michael, Marks got into a car accident.  He was later found by police officers in a restricted area of LAPD's 77th Division station.

---

background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2, disapproved on another ground in *People v. Patton* (2025) 17 Cal.5th 549, 569.)  We do not rely on these facts in assessing whether the superior court properly concluded that Marks failed to make a prima facie showing of eligibility.  (*Flores*, at p. 988.)

3

## II. Procedure

### A. Original trial court proceedings and direct appeal

On February 23, 2004, the jury convicted Marks of the attempted murder of Craig (§§ 187, subd. (a), 664, subd. (a); count 1), the attempted murder of Ryan (§§ 187, subd. (a), 664, subd. (a); count 2) and the kidnapping of Michael, a person under 14 years old (§ 208, subd. (b); count 3).[3] The jury found that each attempted murder was willful, deliberate, and premeditated. It also found true the allegation that Marks personally inflicted great bodily injury on Ryan, who was under the age of five years (§ 12022.7, subd. (d)) as to count 2.

The trial court imposed consecutive life sentences for each attempted premeditated murder in counts 1 and 2, six years for the great bodily injury enhancement as to count 2, and a consecutive 11 years for the kidnapping in count 3.

On direct appeal, this division affirmed Marks's conviction.[4]

### B. Resentencing petition

On May 2, 2022, Marks filed a petition for resentencing under former section 1170.95.[5] On January 18, 2023, the District Attorney responded that Marks was ineligible for relief because he was prosecuted as the actual perpetrator and the jury was not instructed on the natural and probable consequences doctrine.

---

[3] On February 25, 2004, the jury found Marks was sane at the time of the commission of the offenses.

[4] *People v. Marks*, *supra*, B174648.

[5] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

4

The District Attorney included the jury instructions, the opinion from the direct appeal, and the verdict forms. On March 7, 2023, the superior court appointed counsel to represent Marks on the petition.

On April 10, 2024, the superior court conducted a hearing on the prima facie showing. The court found that Marks had not established a prima facie showing for relief and denied the petition.

On April 24, 2024, Marks filed a notice of appeal.

Marks appealed and we appointed counsel to represent him. Counsel filed an opening brief stating she had "reviewed the entire record and found no arguable issues to raise on appeal." Counsel requested that we follow the procedures in *Delgadillo* and exercise our discretion to conduct an independent review of the record. Counsel stated she had written to Marks and advised him he could submit a supplemental brief. Counsel also stated she would send a copy of her brief and the transcripts of the record on appeal to Marks.

Marks filed a supplemental brief.

## DISCUSSION

### I.      Ineligibility for relief under section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) amended the substantive law on accomplice liability for murder by significantly narrowing the felony murder rule and by requiring that a principal in a crime act with malice aforethought. (§§ 189, subd. (e), 188, subd. (a)(3); *People v. Curiel* (2023) 15 Cal.5th 433, 448–449 (*Curiel*).) The latter change requires that malice "not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The change eliminated liability for

5

murder as an aider and abettor under the natural and probable consequences doctrine.  (*Curiel*, at p. 449; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) expanded eligibility for resentencing to include convictions for attempted murder under the natural and probable consequences doctrine.  (§ 1172.6, subd. (a); *Delgadillo*, *supra*, 14 Cal.5th at p. 223, fn. 3.)

These new laws created a procedure, codified at section 1172.6, for defendants convicted of attempted murder under the natural and probable consequences doctrine (or murder under the felony murder or natural and probable consequences doctrines or any theory in which malice is imputed based on participation in a crime) to petition to vacate the conviction and be resentenced on any remaining counts, if they could not now be convicted because of the changes made effective January 1, 2019.  (§ 1172.6, subd. (a); *Lewis*, *supra*, 11 Cal.5th at pp. 959–960.)  If the petitioner makes a prima facie showing, the court must issue an order to show cause and hold an evidentiary hearing where the prosecutor and petitioner may offer new or additional evidence.[6]  (§ 1172.6, subd. (c); *Lewis*, at p. 960.)

---

[6]     At the evidentiary hearing, the superior court may consider evidence previously admitted "including . . . , stipulated evidence, and matters judicially noticed."  (§ 1172.6, subd. (d)(3).)  The prosecution has the burden of proving beyond a reasonable doubt the petitioner is guilty of attempted murder under the amended law.  (*Ibid*.; *People v. Hill* (2024) 100 Cal.App.5th 1055, 1065–1066.)  The trial court acts as an independent fact finder to determine whether the prosecution has met its burden (*Hill*, at p. 1066) but its factual determinations are limited to "issues made

The prima facie inquiry is limited. (*Lewis, supra*, 11 Cal.5th at p. 971.) The superior court takes the petitioner's factual allegations as true and refrains from factfinding. (*Ibid.*) The record of conviction will necessarily inform the prima facie inquiry, enabling the court to distinguish between potentially meritorious petitions and clearly meritless ones. (*Ibid.*)

The jury instructions and verdicts are part of the record of conviction. They "may provide 'readily ascertainable facts from the record' that refute the petitioner's showing . . . . [Citation.]" (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, overruled to the extent it is inconsistent with *Lewis, supra*, 11 Cal.5th 952; *People v. Harden* (2022) 81 Cal.App.5th 45, 56 [affirming summary denial because jury instructions and verdict established ineligibility for relief as a matter of law].) If the record conclusively establishes that the petitioner is ineligible for relief, the superior court may dismiss the petition. (*Curiel, supra*, 15 Cal.5th at p. 450.)

Whether the record of conviction shows the petition is ineligible for section 1172.6 relief as a matter of law is a legal question that we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

Section 1172.6 relief for a conviction of attempted murder is only available if it was based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a)(1); *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*); *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.) To properly deny a petition for

---

relevant by the changes to the law effected by [the amendments]." (*Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 787.)

7

resentencing a conviction for attempted murder at the prima facie showing stage, the record must conclusively demonstrate that the jury did not rely on the natural and probable consequences doctrine. (*Lovejoy*, at p. 865.)

Here, the court did not instruct on any theory of aiding and abetting, including the natural and probable consequences doctrine. Cases consistently affirm the denial at the prima facie showing stage when the jury was not instructed on any theory that required malice be imputed to the defendant. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205–206; *People v. Estrada* (2022) 77 Cal.App.5th 941, 943, 946; *People v. Rushing* (2025) 109 Cal.App.5th 1025, 1034–1035; *Coley*, *supra*, 77 Cal.App.5th at p. 548.)

The only theory of liability provided by the jury instructions was that Marks was the direct perpetrator who acted with intent to kill and the only participant in the attempted murders. Consistent with that theory was the trial court's instruction on attempted willful, deliberate, and premeditated murder in CALJIC No. 8.67. Also consistent with the theory that Marks was the direct perpetrator who acted with intent to kill was the jury's special findings that the attempted murders were willful, deliberate, and premeditated and that Marks personally inflicted great bodily injury on Ryan. Relief under section 1172.6 "is unavailable if the [petitioner] was . . . the actual killer." (*People v. Strong* (2022) 13 Cal.5th 698, 710; *Delgadillo*, *supra*, 14 Cal.5th at p. 233.)

## II. Other claims raised by Marks

In Marks's supplemental brief, he first argues that counsel "sufficiently lacked the professional conduct to represent and defend [his] rights to fair and equal rights in court proceedings"

and "made no meaningful attempts to devise [a] defense." As an initial matter, " 'there is no constitutional right to the effective assistance of counsel' in state postconviction proceedings[,]" such as the hearing on the prima facie showing under section 1172.6. (*Delgadillo*, *supra*, 14 Cal.5th at p. 226.) But Mark's claim fails even under the federal standard required to establish ineffective assistance of counsel because he does not specifically explain how his counsel's performance "fell below an objective standard of reasonableness." (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) Where, as here, the record conclusively established ineligibility for relief as a matter of law, counsel is not ineffective for declining to make meritless claims (*People v. Solomon* (2010) 49 Cal.4th 792, 843, fn. 24; *People v. Cudjo* (1993) 6 Cal.4th 585, 616), nor can prejudice be established.

Next, Marks complains about the prima facie showing being determined by Judge Arnold, who was the original sentencing judge. But section 1172.6, subdivision (b)(1) states, "The petition shall be filed with the court that sentenced the petitioner. . . ."

Finally, Marks appears to argue that he was improperly excluded from the hearing to determine the prima facie showing. We disagree.

The right to be present attaches when eligibility for relief under section 1172.6 requires an evidentiary hearing. (*People v. Basler* (2022) 80 Cal.App.5th 46, 58; *People v. Quan* (2023) 96 Cal.App.5th 524, 532.) A defendant has the right to be present, under the Sixth and Fourteenth Amendments of the federal constitution and article I, section 15 of the California Constitution, at all critical stages of the criminal proceedings, such as the imposition of sentence, a modification of the sentence,

9

or resentencing.  (*Basler*, at p. 57; *People v. Simms* (2018) 23 Cal.App.5th 987, 996 (*Simms*).)  The section 1172.6, subdivision (d)(3) evidentiary hearing permits the parties to offer "new or additional evidence" and requires the prosecution to prove that the petitioner is guilty under a valid theory.  The petitioner may provide input to his counsel and may choose to testify.  Because such a proceeding is critical, the petitioner is afforded the right to be present.

However, section 1172.6 does not provide a right to be present at the prima facie showing stage.  Nor would the state and federal right to be present apply.  (*Simms*, *supra*, 23 Cal.App.5th at p. 996.)  Petitioners do not have the right to be present to address purely legal questions or where their presence " 'would not contribute to the fairness of the proceeding.' " (*People v. Fedalizo* (2016) 246 Cal.App.4th 98, 109.)  Unlike the evidentiary hearing under section 1172.6, subdivision (d)(3), eligibility at the prima facie showing stage is determined as a matter of law, not any interpretation of disputed facts.  Parties may not present evidence.  The court bases its determination on the record of conviction without making any factual findings. (*Lewis*, *supra*, 11 Cal.5th at p. 966.)  Marks's presence would not have affected the outcome of the hearing, especially when the jury instructions and verdict entirely established that he was the sole direct perpetrator who intended to kill the victims.

## DISPOSITION

We affirm the trial court's order denying Marks's petition for resentencing under section 1172.6.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



HANASONO, J.


We concur:



EDMON. P. J.



EGERTON, J.